

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-27-2003

# St Paul Fire v. Temple Univ Hosp

Precedential or Non-Precedential: Non-Precedential

Docket 01-4467

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"St Paul Fire v. Temple Univ Hosp" (2003). *2003 Decisions.* Paper 786.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/786

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No: 01-4467

———————

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

Appellant

v.

TEMPLE UNIVERSITY HOSPITAL;
RAYMOND BROWN, M.D.;
VALERIE WHITEMAN, M.D.

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 01-cv-02628)
District Judge: Honorable Harvey Bartle, III

———————

Argued on September 9, 2002

Before: NYGAARD, ROTH and WEIS  Circuit Judges

(Opinion filed:  February 27, 2003)

Joseph W. Fullem, Jr., Esquire
Lisa G. Nolan, Esquire (Argued)
Kittredge, Donley, Elson, Fullem & Embick, LLP
421 Chestnut Street, 5th Floor
Philadelphia, PA 19106

  Counsel for Appellant

1

James F. Israel, Esquire
Christopher K. McNally, Esquire (Argued)
Israel, Wood & Puntil
Suite 501, Grant Building
310 Grant Street
Pittsburgh, PA 15219

John R. McHaffie, Esquire
1700 Market Street, Suite 1620
Philadelphia, PA 19103

<u>Counsel for Appellees</u>

---

O P I N I O N

---

ROTH, Circuit Judge:

## I.        **Introduction**

Plaintiff St. Paul Fire and Marine Insurance Company (St. Paul) appeals an order of the U.S. District Court for the Eastern District of Pennsylvania, granting defendants' Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Defendants are Temple University Hospital, Raymond Brown, M.D., and Valerie Whitman, M.D. (Temple). The issue on appeal is whether excess and umbrella insurer St. Paul has the right, under its contracts with insured Temple, to select counsel for and to defend a medical malpractice claim, *Colon, v. Temple Univ. Hosp.*, March Term, 2000, No. 1963 (Phila. C.P.) (*Colon* Action), brought against Temple by the parents of a minor child for personal injuries sustained during birth.

2

The parties do not dispute that Pennsylvania law applies in this diversity action.  We conclude, however, that the District Court erred in its interpretation under Pennsylvania law of the contact between St. Paul and Temple and that it erred in its holding under the Pennsylvania Medical Professional Liability Catastrophe Loss Fund Statute (CAT Fund Statute) that only *basic* insurance carriers (including self-insurers) can defend medical malpractice claims.  Accordingly, we will reverse the District Court's dismissal of the complaint and remand this case to the District Court for the entry of a declaratory judgment permitting St. Paul to defend the *Colon* Action, including the selection of counsel.

## II.     Facts and Procedural History

Since July 1, 1996, St. Paul has insured Temple for medical malpractice under two agreements, which comprise Policy No. 566XM1864:  (1) an excess insurance agreement, pursuant to Healthcare Facility Professional and Commercial General Liability Protection–Claims Made Excess of Self-Insured Retention Form, and (2) an umbrella agreement, under a Healthcare Facility Umbrella Excess Liability Protection Form.  The excess agreement provides $1.00 of liability coverage to Temple beyond its Self-Insurance Retention (SIR) of $1.2 million per claim.  Between St. Paul's excess and umbrella coverage, there is also a Shared Excess Retention in the amount of $2 million.  This is a capped buffer that applies only once per policy term.   Above the Shared Excess Retention, the St. Paul umbrella agreement provides $23 million in coverage.

Temple contends, however, that it is covered by another policy with Lexington Insurance Company (Lexington) and that Lexington has the right to defend Temple's

medical malpractice claims. From July 1, 1999, until July 1, 2000, Temple contracted with

Medical Inter-Insurance Exchange (MIIX) for a fronting policy.[1] Temple claims that

Lexington later agreed to assume the rights of MIIX. St. Paul argues to the contrary that no

other basic coverage was scheduled at the time that Temple purchased its policy from St.

Paul. For that reason, St. Paul maintains that the provisions of its policy with Temple

control the medical malpractice claims covered by the St. Paul policy.

The dispute arose when Temple refused to allow St. Paul to select counsel for, and

to defend, the *Colon* Action. St. Paul filed a motion for declaratory judgment against

Temple on May 29, 2001, seeking the right to defend the *Colon* Action, including the

selection of counsel. On August 16, 2001, Temple filed a Rule 12(b)(6) motion, arguing

that Lexington provided its basic liability insurance policy and concomitantly had the

superceding duty to defend Temple's medical malpractice actions.

St. Paul objected to Lexington's alleged duty to defend because the Lexington

policy was not included in the record before the court and, as a result, Temple's contractual

relationship with Lexington was outside the scope of a 12(b)(6) motion. In response to St.

Paul's objection, the court solicited supplemental briefs on the 12(b)(6) motion, asking

Temple to explain its insurance scheme in more detail and to file the Lexington policy.

Temple filed an additional brief, addressing the issue that the CAT Fund Statute precluded

---

[1]A fronting policy is not a basic policy but a surety agreement which obligates the insurer to step in if the insured, a self-insurer like Temple, becomes insolvent. If there is no insolvency, the insured retains control of defending lawsuits.

St. Paul's right to defend and select counsel.

The court heard oral argument on November 9, 2001, and issued a Memorandum and Order on November 21, 2001, granting Temple's motion to dismiss on the basis of the CAT Fund Statute and the language of the umbrella agreement. St. Paul filed a timely appeal on the issue whether St. Paul had the right to select counsel for and to defend Temple's medical malpractice claims, including the *Colon* Action.

### III. Jurisdiction and Standard of Review

The District Court had diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as St. Paul is a company headquartered in Minnesota, Temple (hospital and individual defendants) is located in Pennsylvania, and the amount in controversy exceeds $75,000. We have jurisdiction to review the Memorandum and Opinion of the district court, as it is a final and appealable order of that court. 28 U.S.C. § 1291. The relevant contract and statutory interpretations of the District Court are conclusions of law, subject to *de novo* review.

### IV. Discussion

#### A. The July 1, 1999, Excess Insurance Contract Between the Parties Affords St. Paul the Right to Defend Temple's Medical Malpractice Claims, Including the *Colon* Action

It is clear to us, as it was to the District Court, that the plain language of Temple's July 1, 1999, excess insurance contract with St. Paul affords St. Paul the right to defend Temple's medical malpractice claims. St. Paul's excess agreement with Temple states:

> **Right to Defend.** We'll have the right but not the duty to defend any covered

claim or suit for injury or property damage made against any protected person. We have this right even if we believe defense costs and the total amount any protected person will be legally required to pay as damages for injury or property damage will not exceed the self-insured retentions. We have no duty to perform other acts or services.

Pennsylvania law recognizes that a self-insurer may contract the obligation to defend insurance claims to another insurer. *Williams Crane & Rigging, Inc. v. Northbrook Property and Casualty*, No. CIV.A.93-4266, 1996 U.S. Dist. Lexis 3586, at *1, 14 (E.D. Pa. Mar. 26, 1996) (defense by excess insurer). Although *Williams Crane* is not binding on us, its holding is supported by Third Circuit law. *See Cooper Labs., Inc. v. Int'l Surplus Lines Ins. Co.*, 802 F.2d 667 (3d Cir. 1986) (defense by excess insurer). In this case, the July 1,1999, contract between St. Paul and Temple furnishes the right to defend to St. Paul. Further, the District Court correctly applied and interpreted Pennsylvania law to hold that the right to defend includes the right to select counsel. *Widener Univ. v. Fred. S. James & Co.,* 537 A.2d 829, 833 n. 9 ("Duty to defend insurer has right to defend litigation and to select counsel."), *citing ACandS, Inc. v. Aetna Casualty and Surety Co.*, 764 F.2d 968, 975 (3d Cir. 1985) ("[T]he right to control settlement contemplates the right to control the defense.") (internal citation omitted).

Temple argues that the policy as a whole is ambiguous, however, and thus should be construed in a light most favorable to the non-moving party. Temple cites the language of St. Paul's umbrella insurance contract with Temple as proof of ambiguity. The umbrella policy contract clearly does not support a right or duty to defend. It states that St. Paul has no duty to defend, "if your [Temple's] Basic Insurance has such a duty to defend. However,

6

we [St. Paul] do have the right to associate in the defense and control of any claim or suit that is reasonably likely to involve us." Logic does not, however, require that the two agreements – the excess and the umbrella contracts – contain the same duty to defend language in order to avoid ambiguity in the policy as a whole. Stated another way, reading the policy as a whole need not entail, in a situation of aggregative contracts, that each contract contains the same obligations and rights. It is unambiguous that, under the excess contract, St. Paul has the right to defend Temple's medical malpractice claims up to Temple's Self-Insurance Retention of $1.2 million per claim, Shared Excess Retention of $2 million, and the $1 limit of the excess coverage provided by St. Paul. Similarly, it is clear that the $1 of liability coverage is necessary for St. Paul's right to defend Temple's medical malpractice claims, as the umbrella policy does not, according to its terms, provide such a right.[2]

## B. St. Paul's Policy Language Does Not Contravene the CAT Fund Statute

Temple argues that, regardless of the perceived ambiguity in the language of its policy with St. Paul, the Pennsylvania CAT Fund Statute is violated by contracts that remove the defense of insurance claims from the basic coverage insurance carrier. The District Court agreed, holding that basic insurance coverage insurers are "unambiguously obligated" under the CAT Fund Statute to defend professional liability claims. The District Court cited 40 Pa. Stat. Ann. § 1301.72, which states in pertinent part, "(d) The basic coverage

---

[2]Temple does not raise the possibility of waiving the $1 of liability coverage, so we need not address the implications of such a waiver.

7

insurance carrier or self-insured provider shall be responsible to provide a defense to the claim, including defense of the fund, except as provided for in section 605 [exception inapplicable]." The court then cited *Crozer Chester Med. Ctr. v. Med. Prof'l Liab. Catastrophe Loss Fund*, 713 A.2d 1196, 1201 (Pa. Commw. Ct. 1998), *aff'd,* 725 A.2d 755 (Pa. 1999), to support its conclusion. The court continued:

> Clearly the language of the excess portion of the policy authorizing St. Paul to defend conflicts with the 'mandatory language' of the statute requiring the basic insurer to defend. . . .The CAT Fund statute has the salutary effect of obviating the disputes between a basic carrier and an excess carrier when their respective policies each have a right-to-defend clause."

The District Court misinterpreted *Crozer* and thus erred in holding that § 1301.72 requires that only basic coverage insurer carriers have the right to defend medical malpractice claims. The issue in *Crozer* was whether the CAT Fund was obligated to assume the defense *once the basic insurance carrier's coverage limits were exhausted*, not whether a basic or an excess insurer possessed the right to defend. The *Crozer* court agreed with the Fund, holding that the Fund was obligated to pay post-exhaustion losses and damages but that the basic insurer remained obligated to defend the claims. 713 A.2d at 1199-1200. The only "unambiguous obligation" was that the claims be defended by an insurer, even after the policy limit was exhausted. *Id.* at 1199. In *Crozer,* the duty to defend fell either to the CAT Fund or the basic insurer; no other insurer was involved. The CAT Fund was not obligated to defend under the statute. The basic insurer therefore had to

8

do so.[3]

The *Crozer* court recognized a division of burdens between the Fund and the insurer *generally*. Under this division, the insurer must defend post-exhaustion claims and the Fund pays losses or damages post-exhaustion. The *Crozer* court held that this division comports with § 1301.702(d) of the Act and is consistent with the CAT Fund Director's statutory authority to maintain the Fund's financial integrity. *Id.* at 1200. This duty of the self-insurer or the basic insurer to defend claims under the CAT Fund Statute does not, however, preclude that self-insurer or basic insurer from contracting the right to defend to another insurer.

Moreover, the language of § 1301.02 of the CAT Fund Statute clearly articulates concerns different from the issue in the present case. The statute provides that injured parties are entitled to prompt and fair relief at a reasonable cost[4] and that claims for which the CAT Fund could be held responsible should be defended by the basic insurance carrier or the self-insured provider.[5] In this case, Temple, the self-insured provider, contracted that right of defense to St. Paul. Nothing in the statute or in the general principles of

---

[3]The CAT Fund has a right to defend "any claim payable by the fund," but the Fund did not exercise that right in the present case. § 1301.702(f).

[4]"It is the purpose of this act to make available professional liability insurance at a reasonable cost, and to establish a system through which a person who has sustained injury or death as a result of tort or breach of contract by a health care provider can obtain a prompt determination and adjudication of his claim and the determination of fair and reasonable compensation." 40 Pa. Stat. Ann. § 1301.102.

[5]"The basic insurance carrier or self-insured provider shall be responsible to provide a defense to the claim including defense of the fund. . . ." § 1301.02

9

contract law prevents such a contracting away by the self-insured of the duty to defend.

The District Court remarked that an equal right to defend may create a situation in which each insurer attempts to minimize its liability by focusing the blame on the other, to the detriment of insureds. This risk may indeed occur but St. Paul would have had it in mind when it included in its excess agreement its right to select counsel and to defend a medical malpractice claim. Temple also would have had it in mind when it contracted with St. Paul, permitting St. Paul to do so.

### C. Temple's Fronting Policy with Lexington Does Not Provide Basic Insurance

In additional, the parties raise the issue of whether Temple's contract with Lexington, a fronting policy, serves to name Lexington the basic insurance carrier and thereby confer the duty and right to defend upon Lexington.[6] St. Paul is correct that Lexington's policy, as a fronting policy, is not an agreement for basic insurance but a surety agreement, since Lexington would assume Temple's liability only if Temple were insolvent. Regardless, under basic principles of contract law, Temple's contract with St. Paul would be valid against subsequent contracts by Temple for the right to defend.

Although we are sympathetic to the institutional concerns raised by Temple, namely its desire to invoke institutional and individual providers' policies before excess insurance and to litigate claims to clear the records of medical professionals under its employ, Temple remains bound by its agreement with St. Paul. The right to defend the *Colon*

---

[6]If Lexington was Temple's basic insurer, its SIR would be reduced from $1.2 million per claim to Lexington's alleged policy limit of $400,000.

10

Action, including the selection of counsel, resides with St. Paul.

For the above reasons, we will reverse the judgment of the District Court of November 21, 2001, and remand this case to it with instructions to enter a declaratory judgment in favor of St. Paul.

_____

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,

    /s/   Jane R. Roth

Circuit Judge